USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8-5-11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ALEX GOMEZ,

                Petitioner,

     - against -

ROBERT ERCOLE,

                Respondent.

---

REPORT AND
RECOMMENDATION

09 Civ. 7723 (RMB) (RLE)

**To the HONORABLE RICHARD M. BERMAN, U.S.D.J.:**

## I. INTRODUCTION

Petitioner Alex Gomez, a New York State prisoner at Green Haven Correctional Facility, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition was received by the *Pro Se* Office in this District on August 17, 2009. Gomez was convicted of attempted murder in the second degree, N.Y. Penal Law §§ 110/125.21(1), and criminal possession of a weapon in the second degree, N.Y. Penal Law § 265.03(2), and was sentenced to determinate terms of twenty-two years and fifteen years, respectively, to be served concurrently.

Gomez contends that his incarceration violates the Sixth Amendment and Due Process Clause of the United States Constitution in that he was denied the effective assistance of counsel. (Petition under 28 U.S.C. § 2254 ("Pet.") ¶ 13.) For the reasons set forth below, I recommend that the petition be **DENIED**.

## II. BACKGROUND

### A. Factual Background

#### 1. The Facts as Presented at Trial

In late July or early August 2003, Fitzgerald Donaldson began selling crack cocaine for

Gomez. (Trial Transcript ("Tr.") at 103-04, *People v. Gomez*, 5356/03 (N.Y. Sup. 2004)). After selling Gomez's drugs for six weeks, Donaldson began selling his own drugs from Gomez's "spot" in front of a house at 2272 Loring Place in the Bronx. (Tr. at 104-05.)

Some of Gomez's friends who lived at 2272 Loring Place discovered that Donaldson was selling his own drugs from Gomez's spot. Donaldson returned to his room at the house and found that it had been ransacked. (Tr. at 116.) He was chased out of the house. (Tr. at 117.) In the weeks that followed, Donaldson had two altercations with Gomez, although neither resulted in serious physical injury. (Tr. at 120-23.) He testified that in both instances Gomez was driving a burgundy minivan. (Tr. at 120-21.)

Donaldson testified that "one day" after the two run-ins with Gomez, he and a friend returned to 2272 Loring Place with the hopes of retrieving the clothing that he had left behind. (Tr. at 116-17, 124-25.) Gomez's friends insisted that Donaldson and his friend leave. Donaldson testified that as they walked away, he heard a gunshot behind them and "took off" running. (Tr. at 124-25.)

On December 16, 2003, Donaldson was "smoking pot and carrying on" with Jason Bolton, his brother-in-law. (Tr. at 126.) They left Bolton's apartment around 3:00 p.m. and walked to a friend's apartment building on the corner of 183rd Street and Loring. (Tr. at 126, 219.) They stood on the corner talking to another friend until approximately 4:00 p.m. (Tr. at 125-28, 219.) Donaldson and Bolton testified that at around 4:00 p.m. Gomez drove by in a burgundy minivan, and then backed the minivan up until he could see Donaldson. (Tr. at 128, 221.) Donaldson testified that Gomez got out of the car, made eye contact with him and Bolton, shook his head, and drove toward 2272 Loring Place. (Tr. at 130.) Bolton testified that Gomez was still in the car when he made eye contact with him and Donaldson. (Tr. at 221.) Both

2

testified that Gomez wore a black bubble jacket and a hoodie sweatshirt. (Tr. at 131-32, 221-22.)

A few minutes later, Donaldson and Bolton were still on the corner talking to two girls. (Tr. at 132-33, 223.) Donaldson testified that he heard someone call him by his nickname, "yo, Bogey," and that he turned around and went "into shock" when he saw a gun pointed at him. (Tr. at 128-29.) Donaldson reached for the gun with his left hand, but was shot in the hand. He began to run, but slipped and fell onto his back. The shooter stood over Donaldson and fired several shots, looked at Bolton, then ran away. (Tr. at 128-29, 223-24, 232.)

Bolton stopped an ambulance that was driving down the street and asked for help. (Tr. at 233.) He fled the scene because of an outstanding bench warrant against him. (Tr. at 234.) Several hours later, he was detained by Detective David Chaffee and brought in for questioning about the shooting. (Tr. at 234-35.)

Donaldson awoke in the hospital, where he was told that he had been shot ten times and was paralyzed from the waist down. (Tr. at 140, 279, 282.) At approximately 5:00 p.m. on December 16, 2003, Detective Anastasis Amanatides arrived at the hospital to speak with Donaldson. Detective Amanatides testified that "in sum and substance," Donaldson was unable to identify who shot him. (Tr. at 493-94.)

On December 24, 2003, Donaldson spoke to Detective Chaffee at the hospital and told him that he knew the shooter was Gomez because he recognized his eyes. (Tr. at 140, 594.) Bolton testified that despite the black ski mask the shooter wore, he recognized Gomez as the shooter because of his eyes. (Tr. at 230.) At trial, Donaldson also testified that despite the presence of a ski mask covering the shooter's "nose down all the way around," he recognized Gomez because of distinctive mole on the outside corner of his right eye. (Tr. at 134-36.) He had never mentioned the mole to Detective Chaffee. (Tr. at 176, 182.)

3

Bolton testified that while he was in custody two or three days after the shooting, he came into contact with Gomez. Gomez told Bolton that if Bolton testified on his behalf, he would keep Bolton's "commissary fat," and "make sure [he was] all right." (Tr. at 242.) Gomez also said that if Donaldson had "just kept his mouth closed, this would have never happened." (Tr. at 242.)

### 2. The Prosecution's Theory of the Case

The prosecution's theory of the case was that Donaldson's shooting was motivated by "money, drugs, and respect." (Tr. 15-18.) The prosecution argued that Gomez attempted to kill Donaldson as punishment for making his own sales on the block Gomez "controlled." (Tr. at 16.)

The court conducted *Molineux* and *Ventimiglia* hearings to determine whether the prosecution could introduce evidence of Gomez's prior bad acts. During the *Molineux* hearing, the prosecution sought to offer evidence of Gomez's prior convictions for possession of crack cocaine in front of 2272 Loring Place. (*Voir dire* ("V.") at 156-57, *People v. Gomez*, 5356/03 (N.Y. Sup. 2004)). Gomez's attorney argued that such evidence was "far too speculative and prejudicial and really serves to try to convict the defendant of this crime by convictions of other crimes." (V. at 157-58.) The judge agreed and ruled that such evidence would not be permitted.

During the combined *Sandoval/Ventimiglia* hearing, the prosecution again sought to offer into evidence Gomez's prior possession convictions so as to show that the shooting arose from a drug-dealing relationship. (V. at 168-69.) Gomez's attorney argued that the "prejudice outweighs…the probative value on the issue of credibility" and suggested a *Sandoval* compromise, wherein Gomez could be questioned to a limited degree about his prior convictions if he took the stand. (V. at 170.) The judge agreed to the compromise, noting that "if [Gomez] opens the door [by denying his prior convictions and arrests in front of 2272 Loring Place], then

4

everything is up for grabs because the facts are different." (V. at 171.)

At trial, the prosecution sought repeatedly to link Gomez to 2272 Loring Place. (*See, e.g.*, Tr. at 110, 122, 225, 232.) The prosecution also sought to link Gomez to the shooting by introducing evidence showing that Gomez drove his mother's burgundy minivan and that it was identical to the one described by Donaldson and Bolton. (Tr. at 405-22.) It also elicited testimony from Bolton and Police Officer Kevin Murphy who claimed to have seen Gomez wearing a black bubble North Face jacket similar to the one Donaldson and Bolton testified he wore on December 16, 2003. (Tr. at 132, 409.)

### 3. Gomez's Defense

Gomez's theory of the case was that there was not enough evidence to identify him as the shooter. (Tr. at 23, 387, 638-39.) His trial counsel emphasized the facts that Donaldson did not identify Gomez as the shooter on the day he was shot (Tr. at 494, 647); that Donaldson did not identify the shooter as having a distinctive mole on the corner of his eye (Tr. at 182, 647); and that Gomez's fingerprints were not on the 9mm shell casings found at the scene of the crime. (Tr. at 331, 648.)

Gomez also presented an alibi defense. His mother, Teresa Lora, owns a bodega. She and a customer, Maria Gonzalez, testified that on December 16, 2003, Gomez arrived at the bodega at 4:10 p.m. and that he did not leave the bodega for several hours. (Tr. at 430, 503, 507-11.)

### 4. The Stipulation at Summation

Gomez's ineffective assistance of counsel claim stems from the following portion of defense counsel's summation:

> **Defense:** You know, throughout this case, [the prosecutor] presented to you certified records from hospitals, certified records

5

> from Department of Motor Vehicle [sic], all of these things to show you evidence and to tie Alex Gomez to a van, to a license. My God, he even brought in a Photostat of a parking ticket that was issued in March of 2003, approximately nine months before the events of December 16th. But what didn't he bring you? He didn't bring you a single thing about that house.
>
> **Prosecution:** Objection.
>
> **Court:** Well, ladies and gentlemen, you have to check the record and see if this is accurate. It may not be. It may be. You have to look at it.
>
> **Defense:** When I say a single thing, obviously Mr. Donaldson and Mr. Bolton testified, but, other than that, he didn't give you a single thing. You didn't even have a picture of the house. I think he had somebody point out, well, do you see the area where the house is? But no certified record as to who owns the house. No testimony by a landlord that Alex Gomez had anything to do with this white house.
>
> **Prosecution:** I object, Judge.

(Tr. at 606-07.)

After the prosecutor objected to defense counsel's statements at summation, a discussion took place at sidebar during which the prosecutor told the judge that "you told me if he opened the door I would be allowed to introduce evidence. Now he's saying I haven't tied him to this house at all. He's blown the door wide open now." (Tr. at 608.) Agreeing with the prosecution, the judge noted that "this was pretty serious stuff" and that she had "never done this before." (Tr. 619.) The judge ordered that the summations be stopped. (Tr. at 619.) The parties agreed to a stipulation that Gomez was seen in front of 2272 Loring Place selling or possessing drugs. (Tr. 632.)

Gomez contends that trial counsel's "blowing the door open" to evidence of his prior drug-related convictions in front of 2272 Loring Place constituted ineffective assistance of counsel. (Pet. ¶ 13.)

6

## B. Procedural Background

Gomez appealed his conviction, which was affirmed by the Appellate Division, First Department, on June 24, 2008. *People v. Gomez*, 52 A.D.3d 395 (App. Div. 1st Dep't 2008). On appeal, Gomez raised two claims: 1) ineffective assistance of counsel and 2) the relevance of evidence demonstrating consciousness of innocence. In rejecting both claims, the court found that the ineffective assistance of counsel claim was unreviewable because it involved matters outside the record concerning trial counsel's strategy. To the extent that it could review the existing record, the court found that the defendant did receive effective assistance of counsel under both state and federal standards. *Id.* at 395. The court also "considered and rejected" the relevance of consciousness-of-innocence evidence claim. *Id.* Leave to appeal to the New York Court of Appeals was denied on August 25, 2008. *People v. Gomez*, 11 N.Y.3d 736 (2008).

Gomez filed a petition for writ of habeas corpus on August 17, 2009. In it he raised an ineffective assistance of counsel claim, but he did not raise the relevance of consciousness-of-innocence evidence claim.

## III. DISCUSSION

### A. Threshold Issues

#### 1. Timeliness

A petitioner must file an application for a writ of habeas corpus within one year of his conviction becoming final. *See* 28 U.S.C. § 2244(d)(1). A conviction becomes final "'when the time to seek direct review in the United States Supreme Court by writ of certiorari expire[s],'" that is, ninety days after the final determination by the state court. *Williams v. Artuz*, 237 F.3d 147, 150 (2d Cir. 2001) (*quoting Ross v. Artuz*, 150 F.3d 97, 98 (2d Cir. 1998).) Gomez's conviction became final on November 23, 2008. Because the *Pro Se* Office of this District

7

received Gomez's Petition on August 17, 2009, the Petition is timely.

### 2. Exhaustion

Pursuant to 28 U.S.C. § 2254(b), as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), the Court may not grant a petition for habeas corpus unless the petitioner has exhausted all state judicial remedies. 28 U.S.C. § 2254(b)(1)(A); *Picard v. Connor*, 404 U.S. 270, 275 (1971); *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997). In order to satisfy substantive exhaustion, a petitioner's claim before the state courts must have been federal or constitutional in nature. Although not an exacting standard, a petitioner must inform the state courts of "'both the factual and the legal premises of the claim [he] asserts in federal court.'" *Jones v. Vacco*, 126 F.3d 408, 413 (2d Cir. 1997) (*quoting Daye v. Attorney Gen.*, 696 F.2d 186, 191 (2d Cir. 1982) (en banc)).

The petitioner must utilize all avenues of appellate review within the state court system before proceeding to federal court. *See Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994). He must raise a federal claim to each level of the state court system, "present[ing] the substance of his federal claims 'to the highest court of the pertinent state.'" *Id.* (*quoting Pesina v. Johnson*, 913 F.2d 53, 54 (2d Cir. 1990)).

Petitioners bringing claims of ineffective assistance of counsel based on counsel's trial strategy must raise their allegations in an appropriate post-judgment motion. *See, e.g., Davis v. Greene*, No. 04 Civ. 6132, 2008 WL 216912 at *8 (S.D.N.Y. Jan. 22, 2008). In New York, the appropriate post-judgment motion is a motion to vacate the judgment pursuant to C.P.L. § 440.10 ("440 motion"). A 440 motion provides the petitioner with the opportunity to establish an evidentiary record of all relevant facts, including those outside the record, so that the appellate court can evaluate his claim fairly. *Perez v. Conway*, No. 09 Civ. 5173, 2011 WL 1044607

(S.D.N.Y. Mar. 18, 2011); *Walker v. Dalsheim*, 699 F. Supp. 68 (S.D.N.Y. Aug. 17, 1987).

Gomez has not exhausted the state remedies for an ineffective assistance of counsel claim because he has not filed a 440 motion. In an endorsed letter dated November 16, 2010, Gomez filed a motion for stay and abeyance in this District, requesting time to file a 440 motion and exhaust his claim in state court. He sought to file a writ of error *coram nobis* to review the effectiveness of appellate counsel's performance as well. *Alex Gomez v. Robert Ercole*, No. 09 Civ. 7723, 2010 WL 4118357 (S.D.N.Y. Oct. 19, 2010).

Orders for stay and abeyance are granted only when a court "'determines that there was good cause for the petitioner's failure to exhaust his claims first in state court'" *Id.* (*quoting Rhines v. Weber*, 544 U.S. 269, 277 (2005)). Although the court found that Gomez satisfied the good cause requirement because of his "reasonable confusion" about filing procedures, it denied the motion on the merits. *Gomez v. Ercole*, 2010 WL 4118357. The court held that it would be an abuse of discretion to grant a stay to exhaust a meritless claim. *Id.*

A petitioner's failure to exhaust state court remedies presents this Court with two options: (1) the Court may require the petitioner to exhaust his state remedies as to the ineffective assistance of counsel claim, or (2) it may deny the claim on the merits, despite his failure to exhaust. 28 U.S.C. § 2254(b)(2); *see Pratt v. Grenier*, 306 F.3d 1190, 1196-97 (2d Cir. 2003). Here, the Court already has denied Gomez's motion for stay and abeyance; Gomez cannot exhaust his state court remedies. *Gomez v. Ercole*, 2010 WL 4118357. Consequently, the Court may deny his claim on the merits.

## B. Merits of the Claim

### 1. Standard of Review

AEDPA constrains a federal habeas court's ability to grant a state prisoner's application

9

for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. The Act limits issuance of the writ to circumstances in which the state adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); see Williams v. Taylor, 529 U.S. 362, 412 (2000). A state court decision is contrary to federal law if the state court applies "a conclusion opposite to that reached by [the Supreme] Court on a question of law or if [it] decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413. Furthermore, in cases where the state court decision rests on a factual determination, the federal court must find that the "decision...was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

### 2. Ineffective Assistance of Counsel

A petitioner alleging the ineffective assistance of counsel must show that trial counsel's performance was deficient - that his representation fell "below an objective standard of reasonableness...under prevailing professional norms." Strickland v. Washington, 466 U.S. 668, 687-88 (1984). He must also show that there was a "reasonable probability" that but for counsel's deficiency, the outcome of the case would have been different. Id. at 694. The Court need not address both components of the inquiry if the defendant makes an insufficient showing on one. Id. at 698.

At all points in the inquiry, scrutiny of trial counsel's performance must be "highly deferential" and must focus ultimately on the "fundamental fairness" of the challenged proceeding's outcome. Id. at 689, 696; see also Eze v. Senkowski, 321 F.3d 110, 123 (2d Cir. 2003). The reviewing court must distinguish between "mere losing tactics" and "true

ineffectiveness," taking care not to give "undue significance to retrospective analysis." *People v. Baldi*, 54 N.Y.2d 137, 146 (1981).

### a. Trial Counsel's Performance Raises Questions of Deficiency

Whether trial counsel's performance was deficient is determined by inquiring whether his representation fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687. The reasonableness of an attorney's conduct is not governed by specific guidelines. *Id.* at 688. The reviewing court must consider the totality of the circumstances as they were at the time the challenged act or omission occurred. *Id.* at 688, 690; *see also, Wong v. Belmontes*, 130 S.Ct. 383, 345-49 (2009). A single error by otherwise competent counsel may constitute ineffective assistance if that error "compromised the integrity of the trial as a whole." *Rosario v. Ercole*, 601 F.3d 118, 124 (2010); *see also, Kimmelman v. Morison*, 477 U.S. 365, 383 106 S.Ct. 2574, 2587 (1986).

The challenged statement must be considered in light of the totality of circumstances at the time of trial. *Strickland* at 688. Over the course of trial, Gomez's trial counsel questioned prospective jurors, thoroughly cross-examined the prosecution's witnesses, and put on an affirmative alibi defense. He objected frequently to the prosecution's attempts to introduce evidence that might harm his client. (*See* Tr. at 55, 84, 92, 130, 224, 237, 299, 400, 709; V. at 11). In several instances, he successfully moved to exclude incriminatory or prejudicial evidence by the prosecution. (*See, e.g.*, Tr. at 455, 595, 604; V. at 157, 163, 166).

Gomez contends that trial counsel was ineffective for opening the door to evidence of his prior possession convictions. (Tr. at 607; Pet. ¶ 13). The length of the colloquy following counsel's "door-opening" statement and the trial judge's hesitation indicate that the implications of counsel's statement could not be determined clearly. (Tr. at 606-32). As the respondent

11

concedes, the reasonableness of counsel's door-opening statement is "a close question." (Brief for the Respondent ("Resp't Br.") at 28).

At summation, trial counsel sought to show that the prosecution had not linked Gomez to 2272 Loring Place (Gomez's "spot" and the house out of which Gomez's dispute with Donaldson arose). The alleged error stems from trial counsel's statement at summation: "But what didn't [the prosecutor] bring you? He didn't bring you a single thing about that house." (Tr. at 607). The prosecution argued that this statement "bl[e]w[] the door wide open" to previously-excluded evidence of Gomez's convictions for possession of crack cocaine in front of the house. (Tr. at 608). Respondent now argues that counsel's statement was a strategic choice to call into question the prosecution's lack of corroborative evidence about the house. (Resp't Br. at 27).

Under the facts of this case, a reasonable defense attorney would seek to distance his client from the house and cast doubt on any evidence of defendant's links to it. Counsel defended his statement by explaining that he sought to show only that the prosecution had not tied Gomez to a possessory interest in the house. (Tr. at 615.) The challenged statement arose after counsel listed documentary evidence introduced by the prosecution which tied Gomez to a possessory interest in a vehicle and a driver's license. Given this context, it is not unreasonable to credit counsel's argument that the statement was meant to be limited to a possessory interest in the house.

On the other hand, counsel had engaged in extensive pretrial exclusion hearings relating to the possession charges. The drug-dealing operation was headquartered in the house, drugs were sold in front of it, and Donaldson lived in the house and kept his personal stash of drugs there. Counsel had been warned that the prosecution could bring the charges in if he opened the door to them. Though counsel insisted he referred only to an absence of evidence of a possessory

interest in the home, the trial judge's response is not unforeseeable:

> "[trial counsel's] testimony would imply that Mr. Donaldson's testimony about the defendant having anything to do with that house is false. But it is not false because there is independent evidence to show that he sold drugs in front of that house on more than one occasion."

(Tr. at 616.)

In making an unqualified statement, counsel unnecessarily touched on an issue he should have avoided. Gomez maintains that this was constitutionally deficient performance by counsel. The Court, however, need not reach the question of whether this error, standing alone, constitutes ineffective assistance because Gomez cannot show prejudice.

### b. Trial Counsel's Conduct Did Not Prejudice the Petitioner

To satisfy the prejudice component of the *Strickland* test, Gomez must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The "touchstone" of this analytical component lies in determining whether counsel's performance resulted in an unfair proceeding or an unreliable outcome. *Lockhart v. Fretwell*, 506 U.S. 364, 370 (1993).

Before summation, the jury had already heard substantial testimony about Gomez's drug-dealing business and his related affiliation with Donaldson. The jury had heard testimony about two instances when Gomez's drug-dealing partners had threatened Donaldson after discovering that he was selling his own drugs, as well as two instances when Gomez had approached Donaldson and instigated fights with him. The undisputed testimony of Gomez's drug-selling enterprise and his falling out with Donaldson provided sufficient evidence for a reasonable jury to conclude that Gomez had a motive for attempting to murder Donaldson.

The prosecution had also put on two eyewitnesses (Donaldson and Bolton) who testified to recognizing the shooter as Gomez. Though Donaldson did not immediately name Gomez on

the day of the shooting, his treating doctor had testified that he might have been in too much pain to identify the shooter less than an hour after being shot ten times. (Tr. at 295-96.) The prosecution had also offered into evidence several documents, photographs, and testimony showing that Gomez often wore a black, bubble North Face jacket and drove his mother's burgundy minivan, and was wearing that jacket and driving that minivan on the day of the shooting. Finally, the prosecution had introduced evidence that tended to discredit Gomez's alibi witnesses by suggesting that Lora, Gomez's mother, and Gonzalez, her friend and longtime customer, were biased witnesses.

On this evidence alone, a reasonable jury could have found Gomez guilty of attempted murder in the second degree and criminal possession of a weapon in the second degree. The stipulation at summation corroborated the extensive testimony about Gomez's drug-dealing operations out of a house in the Bronx. Gomez fails to show a reasonable probability that but for the possession charges stipulated to by the parties, the jury would have considered the above-mentioned evidence and found him not guilty. Consequently, Gomez fails to satisfy the prejudice component of the *Strickland* test.

## IV. CONCLUSION

For the foregoing reasons, I recommend that Gomez's petition for a writ of habeas corpus be **DENIED**. Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have ten (10) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable Richard M. Berman, 500 Pearl Street, Room 650, and to the chambers of the undersigned, 500 Pearl Street, Room 1970. Failure to file timely objections shall constitute a

waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); 28 U.S.C. § 636(b)(1) (West Supp. 1995); Fed. R. Civ. P. 72, 6(a), 6(d).

**Dated: August 5, 2011**
**New York, New York**

Respectfully Submitted,

*/s/ Ronald Ellis*

The Honorable Ronald L. Ellis
United States Magistrate Judge

**Copies of this Report and Recommendation were sent to:**

<u>Pro Se Petitioner</u>
Alex Gomez
Inmate No. 04A6720
Green Haven Correctional Facility
P.O. Box 4000
Stormville, NY 12582

<u>Counsel for Respondent</u>
Maureen L. Grosdidier
Assistant District Attorney
Bronx County
198 East 161st Street
Bronx, NY 10451